# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9913 | **DATE** | 7/26/2002 |
| **CASE TITLE** | V & V Supremo Foods, Inc. vs. Sloan Acquisition Corp. d/b/a Li'l Guy Foods | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** V& V's motion to dismiss Li'l Guy's amended counterclaim [doc.# 11-1] is DENIED as to Count II (the tortious interference claim); DENIED as to Count I (the fraud claim) insofar as that claim is based on representations made in the December 2000 meeting; and GRANTED as to Count I (the fraud claim) insofar as that claim is based on alleged misrepresentations predating December 2000.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | JUL 2 9 2002 date docketed | 18 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | CDY docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | JJK courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

DOCKETED
JUL 29 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| V & V SUPREMO FOODS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 01 C 9913 |
| v. | ) |
| | ) Magistrate Judge Schenkier |
| SLOAN ACQUISITION CORPORATION | ) |
| d/b/a LI'L GUY FOODS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, V & V Supremo Foods, Inc. ("V&V"), has brought this diversity action against Sloan Acquisition Corporation d/b/a Li'l Guy Foods ("Li'l Guy") for common law breach of contract. Defendant Li'l Guy has filed an amended counterclaim against V&V, alleging state common law claims of fraudulent misrepresentation and tortious interference with business relationships. V&V has moved to dismiss both counts of the amended counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) (doc. # 11-1). For the reasons that follow, both counts of the amended counterclaim survive (although the fraudulent claim does so in a modified form).

I.

The purpose of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the complaint, not to decide its merits. *Gibson v. Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). When ruling on a motion to dismiss, a court assumes that well-pleaded allegations are true and draws all reasonable inferences in the light most favorable to the moving party. *Henderson v. Sheahan,* 196 F.3d 839, 845 (7th Cir. 1999), *cert. denied,* 530 U.S. 1244 (2000). Generally speaking, federal notice pleading requires only that the plaintiff "set out in her complaint a short plain

statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999). However, to survive a motion to dismiss "in all averments of fraud, or mistake the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

Although it is often said that a claim may be dismissed only if, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)), the Seventh Circuit has observed that this maxim "has never been taken literally." *Kyle v. Morten High School*, 144 F.3d 448, 455 (7th Cir. 1998) (quoting *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984)). The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Chawla v. Klapper*, 743 F. Supp. 1284, 1285 (N.D. Ill. 1990). Moreover, the court will not strain to find inferences that do not appear on the face of the complaint. *Lindgren v. Moore*, 907 F. Supp. 1183, 1186 (N.D. Ill. 1995).

## II.

The allegations set forth in Li'l Guy's amended counterclaim, which we accept for present purposes as true, are as follows. From the mid-1980's until early 2001, Li'l Guy (a Missouri Corporation) distributed food products for V&V (an Illinois Corporation) to large grocery stores in the Kansas City metropolitan area (Amended Counterclaim ("ACL") ¶¶ 1-2, 24-25). As of December 2000, Li'l Guy was selling ninety-five percent of its V&V products to stores which were members of the Associated Wholesale Grocers Cooperative ("AWGC") (ACL ¶ 3). AWGC buys food from wholesalers and sells it to its members, who must purchase available food products

2

exclusively from AWGC (ACL ¶¶ 5-6). Frequent communication between the parties allowed V&V to know precisely whom Li'l Guy's clients were, and which ones were members of the AWGC (ACL ¶ 7).

Over time, Li'l Guy heard from different sources that V&V planned to solicit the business of AWGC directly (ACL ¶ 8). When confronted by Li'l Guy on occasions prior to December 2000, V&V's representatives consistently denied the veracity of the rumors (ACL ¶¶ 9-10). Relying on V&V's representations, in August of 1999, Li'l Guy improved its facilities by building a 3,000 foot cooler and reserved half of the cooler's space solely for V&V products (ACL ¶ 11). The amended counterclaim does not reveal or does not specify the dates of these discussions between V&V and Li'l Guy, where they occurred, or who participated in them.

In December 2000, at a meeting held in Li'l Guy's offices in Missouri, David Sloan, the President of Li'l Guy, directly asked Stephen Perry, the Broker Manager for V&V, if V&V was soliciting AWGC's business (ACL ¶¶ 12-14). Mr. Perry responded that V&V was not (*Id.* ¶ 14). Nevertheless, one month later, Mr. Sloan heard from multiple third parties that V&V had agreed to make AWGC the distributor of a significant number of products previously distributed by Li'l Guy (ACL ¶ 15). Mr. Perry confirmed V&V's relationship with AWGC to Mr. Sloan during a second meeting at Li'l Guy's office in Missouri in June or July of 2001; at that time, Mr. Perry admitted that V&V in fact had been soliciting AWGC's business prior to the December 2000 meeting (ACL ¶¶ 16-18).

Prior to the December 2000 meeting, Li'l Guy ordered two refrigerated trucks, costing $117,719.20, which were designated to handle V&V's products (ACL ¶ 19). Li'l Guy could have canceled this order immediately following the December 2000 meeting with V&V, and in that event

3

would have lost only its initial deposit of $2,700.00 (ACL ¶ 20). Li'l Guy would have canceled the truck order in December 2000 had V&V not misrepresented its efforts to solicit AWGC directly (ACL ¶ 20). Instead, the transaction for the trucks was complete by the time Li'l Guy learned the truth, forcing Li'l Guy to buy two unneeded trucks (ACL ¶ 21).

In addition, Li'l Guy continued to purchase V&V products in order to maintain its regular inventory levels and to provide for its AWGC clients (ACL ¶ 22). However, once V&V began to deal directly with AWGC, Li'l Guy's clients, who were members of AWGC, no longer were permitted to purchase the V&V products from Li'l Guy (ACL ¶ 23). As a result, Li'l Guy was stuck with $8,500.00 worth of V&V inventory that Li'l Guy could not sell to non-AWGC members, for which Li'l Guy suffered a total loss (ACL ¶ 23).

### III.

The amended counterclaim contains two counts directed against V&V. Count I alleges common law misrepresentation. Li'l Guy claims that V&V's statements that it was not soliciting the business of AWGC were false and material to Li'l Guy's business decisions (ACL ¶¶ 31-32). Furthermore, Li'l Guy alleges that V&V knew the falsity of the representations at the time they were made and intended for Li'l Guy to rely on them (ACL ¶¶ 33-34). This count further alleges that Li'l Guy, ignorant of the truth, had a right to rely on V&V's representations, did rely on them and suffered damages proximately caused by V&V's misrepresentations (ACL ¶¶ 35-38). In Count II, Li'l Guy alleges common law tortious interference with valid business relationships with its clients who were AWGC members. Li'l Guy asserts that it enjoyed valid business interests with those clients and that V&V, aware of these interests, intentionally interfered with these relationships without justification or excuse, thereby causing Li'l Guy to suffer damages (ACL ¶¶ 39-44).

Before addressing the merits of V&V's motion to dismiss, we consider the parties' disagreement about what law should govern the counterclaims. While V&V contends that both counts in Li'l Guy's amended counterclaim should be determined using Illinois law (Pl.'s Mem. at 2-3 and Reply Mem. at 1-2), Li'l Guy urges this Court to apply Missouri law (Def.'s Mem. at 3-5). But, "a choice of law determination need not be made 'unless there is an actual conflict in the substantive law such that the case could have a different outcome depending on which law is applied.'" *Schoeberle v. United States of America*, 2000 WL 1868130 (N.D. Ill. 2000) (quoting *In re Air Crash Disaster Near Roselawn, Indiana On October 31, 1994*, 948 F.Supp. 747, 749 (N.D. Ill. 1996)). In the Court's view, there is no actual conflict here: any variations in the laws of Missouri and Illinois with respect to the elements of fraud and tortious interference with a business relationship reflect matters of semantics rather than substance.

Under Missouri law, a successful claim of fraudulent misrepresentation requires proof of: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his ignorance of the truth; (5) the speaker's intent that his representation should be acted upon by the hearer and in a manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *See, e.g., City of Wellston v. Jackson*, 965 S.W.2d 867, 870 (Mo. Ct. App. 1998). Under Illinois law, the elements of fraudulent misrepresentation include: (1) a representation that is a statement of material fact, rather than a mere promise or opinion; (2) a false representation; (3) knowledge or belief by the maker of the statement that the representation is false; (4) reasonable reliance on the truth of the statement by the receiver of the statement; (5) an intent or purpose that the statement cause the receiver to act; and

5

(6) detrimental reliance on the statement by the receiver. *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 940 (7th Cir. 1997). Moreover, although the *Weeks* formulation does not mention proximately caused injury as an element, that plainly is required under Illinois law. *See, e.g.,* Illinois Pattern Jury Instructions: Civil § 800.02A (2000 ed.) (reciting as an element of fraudulent misrepresentation that "the plaintiff's damages resulted from his reliance"). *See also City of Chicago v. Michigan Beach Housing Cooperative*, 696 N.E.2d 804, 810 (Ill. App. Ct., 1st Dist. 1998). One might argue that the laws of the two states regarding fraudulent misrepresentation differ substantively in that Missouri law requires the hearer of the representation to have a "right" to rely on the statement while Illinois does not expressly articulate this requirement. However, the Court finds that this requirement is expressed in the Illinois law requirement that the receiver's reliance on the truth of the statement be *reasonable*.

Furthermore, the elements of tortious interference with a business relationship under Illinois law do not vary substantively from the elements of tortious interference with a business relationship under Missouri law. In order to state a claim of tortious interference with a business relationship under Missouri law, a party must plead the following elements: (1) a contract or a valid business relationship (or expectancy of one); (2) defendant's knowledge of the contract, valid business relationship or expectancy; (3) defendant's intentional interference inducing or causing a breach of the contract or business relationship; (4) lack of justification for the defendant's actions; and (5) resulting damages. *Sloan v. Bankers Life & Cas. Co.*, 1 S.W.3d 555, 564-65 (Mo. Ct. App. 1999). Under Illinois law, it is generally recognized to plead tortious interference with an existing business relationship the plaintiff must allege that: (1) it had a valid business relationship; (2) the defendant knew of that relationship; (3) the defendant intentionally and unjustifiably induced a breach or

6

termination of the relationship; (4) an actual breach of contract or termination of the relationship; and (5) resulting damages. *See, e.g., HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 545 N.E.2d 672, 676 (Ill. S. Ct. 1989). *See also Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 409 (N.D. Ill. 2001) (*citing A-Abart Electric Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1404 (7th Cir. 1992)).[1]

Because there is no meaningful difference in Missouri and Illinois law as they pertain to the fraud and tortious interference claims, there is no true conflict and we thus decline to embark on a choice of law analysis at this time.

## IV.

According to Rule 9(b) of the Federal Rules of Civil Procedure, when stating a claim of fraud or mistake "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). This heightened pleading requirement demands more specificity than Rule 8. A claim contains sufficient particularity when it states the who, what, when, where, and how of the alleged fraud. *Jiang v. Allstate Ins. Co.*, 199 F.R.D. 267, 272 (N.D. Ill. 2001); *Woodard v. American Family Mut. Ins. Co.*, 950 F. Supp. 1382, 1388-89 (N.D. Ill. 1997).

---

[1] We recognize that there may be some difference between Missouri and Illinois law as to whether the question of justification is a part of a plaintiff's requisite proof or is instead an affirmative defense. Under Missouri law, a plaintiff alleging tortious interference with contract or prospective business relationships must plead lack of justification as an element of the claim. *See, e.g., Sloan*, 1 S.W.3d at 564-65. Under Illinois law, there is authority indicating that where the complaint discloses or establishes the existence of a statutory or common law privilege for the allegedly interfering conduct, the plaintiff must plead and prove "lack of justification" for the conduct alleged. *See HPI Health Care Services*, 545 N.E.2d at 676; (interference with contract); *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. S. Ct. 1991) (interference with prospective business relationship). However, where the complaint does not allege, disclose or establish the existence of a privilege for the defendants' conduct, there is some ambiguity as to whether lack of justification must be pled by the plaintiff, *see Belden Corp. v. InterNorth, Inc.*, 413 N.E.2d 98, 101-02 (Ill. App. 1st Dist. 1980), or is an affirmative defense to be pled by the defendant. *See Roy v. Coyne*, 630 N.E.2d 1024, 1030-33 (Ill. App. 1st Dist. 1994).

Here, Li'l Guy has pled lack of justification (*see* ACL ¶ 43), so it does not matter to the outcome of the present motion to dismiss whether lack of justification must be pled as an element of the tortious interference claim, since it has been pled, (as we explain below) to a sufficient degree under notice pleading standards.

V&V concedes that Li'l Guy has pled that the alleged fraudulent misrepresentation at the December 2000 meeting with sufficient particularity because the allegation contains who, what, when, where, and how allegations (Pl.'s Mem. at 3 and Reply Mem. at 5) – and even if V&V did not concede the point, the Court would find that Li'l Guy has pled this alleged misrepresentation with sufficient particularity. However, V&V argues that Li'l Guy's allegations of fraudulent misrepresentation prior to the December 2000 meeting fail to meet the specificity requirement of Rule 9(b) (Pl.'s Mem. at 3-4 and Reply Mem. at 3-4). The Court agrees.

Simply stating that "at all times prior to January of 2001, V&V, through its agents and employees, represented to Li'l Guy that V&V was not soliciting the business of AWGC" (ACL ¶¶ 10, 30) is insufficient to meet the heightened pleading standard of Rule 9(b). This statement satisfies the "what" aspect of the particularity requirement, but Li'l Guy does not identify a single individual by name (or otherwise) who either made or received these representations. Furthermore, Li'l Guy does not point to a method by which the representations were made or a location at which they were made. Because the time period is so expansive, covering a 16-year period, V&V would suffer an almost impossible task of isolating the who, where, and how surrounding these alleged misrepresentations.

Li'l Guy argues that it has narrowed this time frame by specifying certain dates on which it acted in reliance on statements made by V&V (Def.'s Mem. at 6) – for example, Li'l Guy alleges that it built a cooler in August 1999 in reliance on alleged misrepresentation (ACL ¶ 11). However, this does little to provide any narrowing of when the alleged misrepresentation that Li'l Guy says it relied on in building the cooler occurred – much less who made or received the alleged misrepresentation.

8

Li'l Guy cites *Medalie v. FSC Securities Corp.*, 87 F.Supp.2d 1295, 1306 (D.C. Fla. 2000), for the proposition that "if the alleged fraud occurred over an extended period of time and the acts were numerous, the specificity requirements are less stringently applied" (Def.'s Mem. at 6). However, in *Medalie*, the court noted that relaxing the time frame requirement "does not negate the plaintiff's duty to adequately plead the contents of the alleged fraudulent representations and the places where the activity occurred." *Id.*, at 1307. In *Medalie*, the plaintiff identified who made the fraudulent statements, where they took place, and what they included. Therefore, the court concluded that the time frame was sufficiently narrow when combined with the other information and that plaintiffs had provided sufficient information to satisfy the heightened pleading requirement. *Medalie*, 87 F.Supp.2d 1295. In the present case, Li'l Guy's allegations remain too general to satisfy Rule 9(b) because they fail to provide enough "other information" to compensate for the lack of specific dates when V&V allegedly made fraudulent representations, who made them, and who received them.

Li'l Guy also cites *Tidewater Beverage Servs., Inc. v. Coca Cola Co.*, 907 F.Supp 943, 947 (E.D. Va. 1995), to suggest that it does not need to allege the names of the representatives who committed fraud because V&V should be able to determine their identities itself (Def.'s Mem. at 6-7). In *Tidewater*, the court held that plaintiff satisfied the particularity requirement without stating the names of the representatives who committed fraud, because "the amended complaint does provide plaintiff with sufficient information so that it may determine who made the alleged misrepresentations." In *Tidewater,* the plaintiff alleged the "what," "when," "where," and "how" of the alleged fraud. In that situation, the Court concluded that the defendant would be able to determine who had committed the alleged misrepresentations. In the present case, by contrast, Li'l

Guy only alleges the "what," leaving V&V to answer the other four questions. Therefore, Li'l Guy's counterclaim does not adequately provide V&V with sufficient notice of the alleged incidents of fraudulent misrepresentation prior to December 2000.

Finally, we consider V&V's argument that even though the alleged December 2000 misrepresentation is pled with particularity, the fraud claim nonetheless must fail because Li'l Guy fails to sufficiently allege all the necessary elements. In particular, V&V argues that Li'l Guy fails to allege the speaker's knowledge of its falsity or his ignorance of the truth; the speaker's intent that his representation should be acted upon by the hearer and in a manner reasonably contemplated; the hearer's reliance on the truth of the representation; the hearer's right to rely on the representation; and the hearer's consequent and proximately caused injury (Pl.'s Mem. at 4-10; Reply Mem. at 5-10). The Court rejects these arguments.

*First*, Li'l Guy alleges that "V&V, through its employees and agents, knew that the representations were false at the time such representations were made" (ACL ¶ 33). The Court finds that because Mr. Perry is alleged to be an agent of V&V (ACL ¶ 7), it can be inferred that Li'l Guy intended this statement to include him in that allegation. Moreover, Li'l Guy specifically alleges that Mr. Perry admitted in the summer of 2001 that V&V had been soliciting AWGC business in December 2000, when Mr. Perry had denied to Mr. Sloan that this was happening (ACL ¶¶ 16-18). These allegations sufficiently plead V&V's knowledge of the falsity (or ignorance of the truth) of its statements at the December 2000 meeting.

*Second*, Li'l Guy alleges that the representations did in fact "cause [it] to continue purchasing V&V products in a manner that would allow Li'l Guy to maintain its regular V&V inventory levels" (ACL ¶ 22). Li'l Guy alleges that V&V intended for Li'l Guy to act upon its false representations

10

(ACL ¶ 34); and, Li'l Guy does not need to allege that V&V specifically intended for it to buy trucks or product, as long as it alleges that V&V intended for it to act in a manner reasonably contemplated. Li'l Guy has done so here.

*Third*, Li'l Guy alleges that it relied on Mr. Perry's representation at the December 2000 meeting before making its decision not to cancel its order of two refrigerated trucks to handle V&V products (ACL ¶¶ 19-20). Li'l Guy claims that it could (and would) have canceled that order immediately following the December meeting, if V&V had not misrepresented its status with AWGC (ACL ¶ 20). However, upon learning of the misrepresentations in January 2001, Li'l Guy could no longer cancel the order and was stuck with the two trucks (ACL ¶ 21). Although Li'l Guy does not allege reliance on Mr. Perry's representations in its decision to buy the trucks, it does plead reliance on his representations in its decision not to cancel the order (ACL ¶¶ 19-20).

*Fourth*, Li'l Guy alleges that it had a right to rely on Mr. Perry's representations (ACL ¶ 37). While V&V asserts that Li'l Guy had no right to rely because there was no contractual bar prohibiting V&V from soliciting AWGC business (Pl.'s Mem. at 6-7; Reply Mem. at 6-7), we do not evaluate the merits when deciding a motion to dismiss. Li'l Guy sufficiently alleges that it had a right to rely on Perry's representation for the purposes of surviving a motion to dismiss.

Finally, Li'l Guy sufficiently pleads that it suffered damages as a proximate cause of Mr. Perry's alleged representations. Li'l Guy alleges that it neglected to cancel its order of two trucks based on Mr. Perry's representations at the meeting and subsequently bore the full cost of these trucks because it was too late to cancel the order once Li'l Guy learned of the alleged misrepresentation (ACL ¶¶ 20-21). Furthermore, Li'l Guy claims that it based its decision to continue purchasing V&V products at regular levels on Mr. Perry's alleged misstatements (ACL ¶

11

22), which resulted in Li'l Guy possessing inventory it could not use (ACL ¶ 23). Taking all pleaded allegations as true, Li'l Guy has properly alleged that its injury was proximately caused by V&V's purported fraudulent misrepresentation.

To summarize, the Court finds that Li'l Guy has sufficiently pled a fraudulent misrepresentation claim – under either Missouri or Illinois law – based on alleged misrepresentations made in December 2000. However, Li'l Guy has failed to sufficiently plead a fraudulent misrepresentation claim based on statements allegedly made over the prior 16-year period. Accordingly, V&V's motion to dismiss the fraudulent misrepresentation claim is denied insofar as the claim is based on the December 2000 statements, and granted insofar as the claim is based on earlier alleged statements.[2]

## V.

The heightened pleading requirements that govern Li'l Guy's fraud claim do not apply to its claim of tortious interference with a business relationship. On this claim, Li'l Guy need only satisfy the notice pleading requirement of Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Under Rule 8, a claimant is not required to "set out in detail the facts upon which he bases his claim." *Strauss v. City of Chicago*, 760 F.2d 765, 768 (7th Cir. 1985). Rather, "under the federal notice pleading approach, the only function pleadings must serve is to give notice of the claim; the development of legal theories and the correlation of facts to theory come later in the process." *International Marketing, Ltd. v. Archer-Daniels-Midland Company, Inc.*, 192 F.3d 724, 733 (7th Cir.

---

[2] In so ruling, the Court expresses no view as to the admissibility at trial of evidence concerning those earlier alleged misrepresentations.

1999). "[A]bsent heightened pleading requirements, plaintiff can plead conclusions as long as those conclusions provide defendant with minimal notice of the claim. In the ordinary case, a pleading need contain only enough 'to allow the defendant[s] to understand the gravamen of the plaintiff's complaint.'" *Liberty Mutual Fire Ins. Co. v. Reimer Exp. Enterprises, Ltd.*, 82 F.Supp.2d 887, 892 (quoting *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999)).

V&V claims that Li'l Guy's tortious interference claim fails even under this liberal standard (Pl.'s Mem. at 12-14; Reply Mem. at 10-11). The Court disagrees.

*First*, V&V argues that Li'l Guy fails to allege a valid business relationship in its amended counterclaim because Li'l Guy does not identify specific clients. Li'l Guy pleads that it sold V&V products to many large grocery stores in the Kansas City Metropolitan area (ACL ¶ 2), and that V&V and Mr. Perry knew who these clients were, and which ones were members of the AWGC (ACL ¶ 7). Li'l Guy also pleads that "a valid business relationship existed between Li'l Guy and its clients who were members of AWGC" (ACL ¶ 40). Li'l Guy further alleges that it enjoyed a regular course of prior dealings with Kansas City grocery stores who are members of AWGC (ACL ¶ 1-4). The Court finds that these allegations have given V&V sufficient notice of the valid business relationship Li'l Guy asserts.

*Second*, V&V further argues that Li'l Guy did not plead the other necessary elements of tortious interference with a business relationship with sufficient factual support. But this argument ignores that the heightened pleading requirements of Rule 9(b) does not apply here, and all that is required is notice pleading. Li'l Guy alleges that V&V knew of the valid business relationship it shared with its clients who were members of AWGC (ACL ¶¶ 7, 41). Li'l Guy pleads that "V&V intentionally interfered with the valid business relationship between Li'l Guy and its clients who

13

were members of AWGC inducing or causing those clients to terminate the valid business relationship with Li'l Guy" (ACL ¶ 42). Finally, Li'l Guy claims that V&V acted intentionally, without justification or excuse, and caused Li'l Guy to suffer damages (ACL ¶¶ 11-12, 19-23, 43-44). These allegations provide V&V with proper notice of the claim, and thus fulfill the Rule 8 requirements – whether assessing the required elements under Missouri or Illinois law.

## CONCLUSION

For the reasons set forth above, V&V's motion to dismiss Li'l Guy's amended counterclaim (doc. # 11-1) is DENIED as to Count II (the tortious interference claim); DENIED as to Count I (the fraud claim) insofar as that claim is based on representations made in the December 2000 meeting; and GRANTED as to Count I (the fraud claim) insofar as that claim is based on alleged misrepresentations predating December 2000.

ENTER:

_____
SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: July 26, 2002

14